1

2

3

4

5

6

7 IN THE UNITED STATES DISTRICT COURT

8 FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10 UNITED STATES OF AMERICA,

11          Respondent,               No. 2:03-cr-0103 JAM EFB P

12     vs.

13 KAMALJIT SINGH KHERA,

14          Movant.                   ORDER

15 _____/

16     Movant is a federal prisoner proceeding through counsel with a motion to vacate, set

17 aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  He seeks post-conviction relief on

18 the grounds that his trial counsel rendered ineffective assistance in failing to inform him of all of

19 the government's proposed plea offers, giving erroneous advice when he did advise him of plea

20 offers, failing to advise him of the possible consequences of proceeding to trial, and failing to

21 adequately represent him at the sentencing hearing.  For the reasons explained below, the court

22 sets a status conference for the purposes of scheduling an evidentiary hearing on movant's

23 claims of ineffective assistance of counsel with regard to the plea bargain process and counsel's

24 advice regarding the consequences of rejecting a plea offer and proceeding to trial.

25 _____

26     [1] This motion was assigned, for statistical purposes, the following civil case number:
No. 2:11-cv-01736 JAM EFB.

1

**I. Procedural Background**

In an indictment dated March 6, 2003, and a superseding indictment dated March 26, 2003, movant was charged with involvement in a narcotics conspiracy. Dckt. Nos. 14, 48, 385 at 4. At trial, on March 11, 2005, a jury found movant guilty of conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841, 846. Dckt. Nos. 205, 206. The jury made a specific finding that the quantity of cocaine he conspired to distribute was at least 5 kilograms. Dckt. No. 206 at 2. That finding as to the quantity of narcotics subjected movant to a statutory mandatory minimum sentence of 10 years in prison and a statutory maximum term of life in prison. 21 U.S.C. § 841(b)(1)(A)(ii)(II). On January 30, 2006, movant received a sentence of 360 months in federal prison. Dckt. No. 308.

Movant appealed his conviction and sentence to the United States Court of Appeals for the Ninth Circuit. Dckt. No. No. 309. On May 24, 2007, the Ninth Circuit affirmed movant's judgment and sentence. Dckt. No. No. 339.

Movant filed a motion pursuant to 28 U.S.C. § 2255 in this court on August 5, 2008, and a first amended motion on June 5, 2009. Dckt. Nos. 348, 358. On February 9, 2010, respondent filed a request to stay further briefing on the § 2255 motion until after the trial judge ruled on a motion to reduce movant's sentence, to be filed by respondent at a later date. Dckt. No. 367. The request for stay was granted by order dated March 10, 2010. Dckt. No. 368. On October 29, 2010, respondent filed a motion to reduce movant's sentence, based on information and assistance provided by movant to the Federal Bureau of Investigations and the Bureau of Prisons during his imprisonment. Dckt. No. 369. On November 2, 2010, the trial judge granted this motion and on November 4, 2010, the district court issued an amended judgment pursuant to which movant's sentence was reduced from 360 months to 240 months. Dckt. Nos. 372, 373.

On November 10, 2010, movant filed the second amended § 2255 motion on which this action proceeds. Dckt. No. 375. Respondent filed an opposition on May 2, 2011. Dckt. No. 385.

## II. Factual Background

### A. Movant's Crime of Conviction

The following factual summary regarding movant's crime of conviction is drawn from the Government's Trial Brief, which laid out the government's anticipated trial evidence at the time of the plea offers described in movant's § 2255 motion. These facts are reproduced here solely to provide a summary factual background with respect to movant's claims.

> Beginning in 2002, the Drug Enforcement Administration (DEA) and the Sacramento High-Intensity Drug Trafficking Area Task Force (HIDTA), which is managed by the Sacramento County Sheriff's Department, began an extensive investigation into the drug trafficking activities of a group headed by Giap Lien. Ultimately, this investigation involved the use of several wiretaps and led to the arrest of approximately 22 defendants.
>
> Cooperating co-defendants will testify that, beginning in 1998 and continuing until February 2003 when arrests were made, this group imported Canadian marijuana, MDMA, and crystal methamphetamine from Canada and sold it locally in the Northern and Eastern Districts of California. Originally, they paid the Canadians for these drugs with cash. In 2001, they began paying for these drugs with cocaine.
>
> Originally, defendant Khera's role in the conspiracy was to arrange the transportation of truckloads of drugs, primarily marijuana, south from Canada. He would accept a cash fee between $10,000 to $15,000 for each truckload for which he arranged for transportation from Canada to points of delivery in California. During this time, he also occasionally supplied Giap Lien with kilos of cocaine for sale locally. In 2001, Khera began supplying kilos of cocaine to Giap Lien for delivery to the Canadians.
>
> In addition to the testimony of some of the co-defendants, the government will present the testimony of law enforcement officers who conducted surveillance of several meetings between defendant Khera and other members of the conspiracy. These meetings, in which bags were observed being delivered, typically occurred in parking lots.
>
> The government will also play recordings of wiretapped telephone calls in which the defendant talks about various cocaine transactions with other members of the conspiracy.
>
> Lastly, the government will present evidence of a transaction on February 3, 2003, in which the defendant provided 10 kilos of cocaine to an individual working as a government informant. The

following day, on February 4, 2003, the defendant appeared with co-defendant Hiep Lien at a motor home to look over the kilos and provide assurances that the kilos were of adequate quality for the people in Canada.

These 10 kilos were later seized during a traffic stop in Redding, California. The evidence of the defendant's participation in that transaction will include the testimony of surveillance agents, video from a pole camera, a body wire recording, recorded telephone calls, and telephone toll records.

Lastly, the government's evidence will include testimony regarding items seized at the defendant's residence including the same vehicles observed by law enforcement officers during the surveilled meetings with other members of the conspiracy, $35,000 cash in the house, over $7,000 on his person, and numerous cell phones and pagers.

In addition, a DEA agent will testify that the defendant made several statements at the time of his arrest including that he had known Giap Lien for 7 years, that he "did someone a favor, that doesn't make [him] a coke dealer;" "All I am is a runner;" that he went to the recreational vehicle where the 10 kilos of cocaine were because Hiep Lien needed his "expertise;" and that, in return for leniency from the agents, he could arrange a delivery of 15-20 kilos of cocaine but would need three days to set it up; that he had to act right away because his cocaine connections would soon learn of his arrest and right now they were "paging him off the hook."

Dckt. No. 386 at 3-5.

**B. Movant's § 2255 Motion**

**1. Underlying Facts**

After movant was arrested on the conspiracy charges, he retained attorney Jesse Garcia and signed a "debriefing agreement" with the government. Dckt. No. 375 at 9; Dckt. No. 348-1, Ex. 1. Movant subsequently attended several debriefing sessions. Dckt. No. 375 at 9. Mr. Garcia has submitted a declaration in support of this § 2255 motion, in which he states that during the course of the debriefings that took place, Anne Pings, the Assistant United States Attorney prosecuting movant's case, informed Garcia that movant had earned a sentence reduction of at least 50% based on the information he had provided. Dckt. No. 375 at 9; Dckt. No. 348-1 at 5, 6. Garcia relayed this information to movant. *Id.*

Movant subsequently discharged Mr. Garcia and retained attorney Johnny Griffin as counsel. Dckt. No. 375 at 10; Dckt. No. 348-1 at 10. Movant attended two more debriefing sessions with Mr. Griffin as his attorney. *Id.* After movant's last debriefing session, in September 2003, Griffin told movant that he would arrange a plea agreement with the government and that "under the sentencing guidelines, which were then binding on the court, [the movant's sentencing] guideline range was 10 to 12 years." *Id.* Mr. Griffin told movant that this guideline range was based on the fact that movant had been involved in a 10 kilogram cocaine transaction. *Id.* He also told movant that Ms. Pings had promised at least a 50% sentence reduction due to his cooperation in the debriefing sessions. *Id.* In light of this advice, movant expected that he would reach a plea agreement with the government for a sentence of 5 to 6 years in prison. *Id.*

On January 29, 2004, Mr. Griffin met with movant in the Sacramento County jail and showed him a letter from Ms. Pings which proposed "a plea agreement whereby, after making a 28% reduction in his sentence for his cooperation, Khera would receive a sentence of 10 years." Dckt. No. 375 at 10; Dckt. No. 348-1 at 10-11, 21-22. The agreement also stated that movant's pre-departure sentence under the agreement was Level 35, pursuant to the federal sentencing guidelines.[2] Griffin told movant that this agreement did not conform to Pings' previous

_____

[2] After setting forth certain requirements and stipulations, that offer stated:

> The government's informal calculations show that the defendant's pre-departure sentence under this agreement would be Level 35, 168 to 210 months. Based on the debriefings already provided, the government will move for an approximately 28% departure pursuant to U.S.S.G. § 5K1.1 to a recommended sentence of 120 months.

Dckt. No. 348-1 at 21. The offer also stated:

> Please make your own calculations. If the court interprets the guidelines differently, the government's departure request may be modified accordingly to reflect an amount commensurate with the nature of his cooperation.

representations to him that she would offer movant a 50% reduction in his sentence for his cooperation, and that he should serve no more than 7 years in prison. Dckt. No. 375 at 10-11; Dckt. No. 348-1 at 10-11. Mr. Griffin also stated that Pings' guidelines calculation was "wrong." *Id.* Mr. Griffin showed movant a letter he sent that same day to Pings rejecting the plea offer. *Id.*[3] Griffin's letter stated that he was "flabbergasted" by the government's offer to recommend only a 28% sentencing departure because he had been advised by movant and attorney Garcia that movant had been promised at least a 50% reduction in his sentence for information he gave during the debriefing sessions. Dckt. No. 348-1 at 23. With regard to the discussions between Griffin and Pings regarding movant's sentence, Griffin's letter stated that "though at various times you advised me that you could not give me the exact extent of your recommended 5K1.1 departure until all debriefings were concluded, there can be no reasoned dispute that the only issue being considered was how much below 50% you would recommend." *Id.*

Subsequently, prior to a November 15, 2004 status conference hearing, Pings presented a second proposed plea agreement to Griffin. That agreement stipulated that movant was "criminally responsible for 10 kilos of cocaine," which carried a mandatory minimum sentence of 10 years in prison. The agreement proposed a possible sentence of as low as 8 years in prison, depending on the level of movant's cooperation. Dckt. No. 375 at 11-12; Dckt 348-1 at 56-67. Pings later stated in a letter to Mr. Griffin that this offer expired on January 31, 2005.[4] Dckt. No.

---

*Id.* at 22.

[3] It is not clear from the record whether Griffin sent this letter to Pings before or after he spoke to movant about the offer.

[4] Specifically, in a letter from Pings to Griffin dated February 8, 2005, Pings explained:

> [T]he United States previously extended a plea offer to your client of 8 years. The offer expired on January 31, 2005. The government has been actively preparing for trial to go forward as scheduled on March 1, 2005. Even if your client desired to enter a

348-1 at 12.  Movant declares that he was not informed of this offer by Mr. Griffin until "just before trial started on March 1, 2005," and even then, not all of the details were explained to him.  *Id.* at 11.  He did not see the actual written offer until after his trial had concluded.  *Id.* Movant declares that if he had been aware of this plea offer before it expired, he "certainly would have accepted it."  *Id.* at 13.[5]

Mr. Griffin subsequently told movant that he had spoken to Pings' supervisor in an attempt to get a firm commitment for a government recommendation of a 50% reduction in movant's sentence for his cooperation, but that the supervisor had refused to make this commitment.  Dckt. No. 348-1 at 12.  Griffin informed movant that he would "have to go to trial in order to get at least a 50% reduction" of his sentence and to "bring [his] sentence down to around 5 years."  *Id.*  Griffin also stated that if movant accepted any plea offer from the government he would lose the ability to challenge the government's recommendation with regard to the amount his sentence could be reduced due to his cooperation.  *Id.* at 13.  Later, at movant's sentencing proceedings, Mr. Griffin informed the court that movant decided to go to trial because the government would not honor its original agreement to give him a 50% sentence reduction based on his cooperation during the debriefings.  *Id.* at 13, 77-78.  Griffin explained:

> I think factually what happened, we accepted the original
> agreement.  When the government came back with the 28 percent,
> we rejected that because that was not our agreement.  Our
> agreement was that Mr. Khera has already earned 50 percent.
> That's why this case went to trial.

---

> guilty plea at some point in the future, he is no longer eligible for
> the additional guideline decrease that is awarded when a defendant
> timely notifies the government of his intention to plead guilty. . . ."

Dckt. No. 348-1 at 230-31.

[5]  In his declaration, movant states that, based on his own calculations, which take into account Pings' previous statement that he had earned a 28% reduction based on his debriefings, he believed this plea offer would result in a sentence of "slightly less than 6 years."  Dckt. No. 348-1 at 13, 112.  Respondent responds that movant was never offered a plea agreement for a sentence of less than 8 years.  Dckt. No. 385 at 10, 11.

> Had the government given us the 50 percent they recommended to
> Mr. Garcia, that Mr. Khera had already earned, we would not have
> gone to trial. So what we rejected was when the government
> changed the terms of the original agreement.

*Id.* at 77-78.[6]

In his declaration, movant states that he received the following advice from Mr. Griffin

regarding his sentence exposure:

> In late January or early February, 2005, Mr. Griffin told me that I
> had to go to trial in order to have any opportunity to show that
> Anne Pings was acting in bad faith concerning the reduction of my
> sentence due to my cooperation. If I accepted any plea offer from
> the government, he said, I would lose the ability to challenge the
> government's recommendation on how amount [sic] my sentence
> should be reduced due to my cooperation. (At my sentencing
> hearing on January 30, 2006, Mr. Griffin acknowledged that "we"
> went to trial because the government would not honor its
> agreement to give a 50% reduction to my sentence for my
> cooperation.) He also said there was no downside to going to trial.
> He explained that in order to go above Level 32, the indictment
> would have to charge *and* the jury would have to find that I was
> involved with more than fifteen kilograms of cocaine. Since the
> indictment did not charge that I was involved with more than
> fifteen kilos, Mr. Griffin explained that my exposure could not be
> more than ten years. He said that the trial would also show, not
> that I was innocent, but that I my [sic] role in the conspiracy was
> less than what my co-defendants were claiming. After trial, and
> we all assumed that I would be convicted, Mr. Griffin said he
> would show at a sentencing hearing that Anne Pings was acting in

---

[6]  The trial judge found, however, that there was no formal agreement between movant
and the government that movant would receive a 50% sentence reduction for his cooperation
during the debriefing sessions. *Id.* at 75-76. The judge explained:

> What I'm finding and I'm going to find once again: There was no
> agreement. Now, Mr. Garcia may have thought there was, but that
> doesn't bind me. It's pretty clear from the facts that have been
> adduced by both yourself and Ms. Pings, there was a series of
> debriefings that turned out to be very minimal in value.
>
> And the bottom line was: You were offered a reduction in sentence
> which you rejected and your client rejected. There was no
> agreement, in my view, and that's my finding, and there's no need
> for an evidentiary hearing on that issue."

*Id.* at 80-81.

bad faith concerning the reduction of my sentence for cooperation. Mr. Griffin said he would show that I was entitled to at least a 50% reduction for my cooperation. If he was right, Mr. Griffin said, my sentence would be about 5 years. If he was wrong, and I only got the 28% reduction that Anne Pings promised in her letter of January 28, 2004, then my sentence would be approximately 7 years. At no time did Mr. Griffin discuss with me any possible adjustments to my sentence for obstruction of justice, possession of a firearm, or a leadership role. At no time did Mr. Griffin discuss with me what would happen if the jury found I was involved with more than 15 kilos of cocaine. I believed, based upon what Mr. Griffin told me, that if I went to trial my maximum exposure was 10 years with the possibility that I could get as little as 5 years. That is why I agreed to go to trial.

Dckt. No. 348-1 at 13-14.

During his trial, movant wrote Mr. Griffin a note which read as follows:

> If the cap is 9.
> She (Pings) has already given us 30%.
> Giap got 50% and never even gave up people's last names.
> Hiep got 50% and what did he do for the government.
> I gave up so much, she kept telling us I'm holding out or even said I lied, where is the proof I lied.
> If the cap is 9, does the judge knock of[] for the 5K1 after we show him what we gave so it could come to 4 ½ easy.

Id. at 130. In response to this note, Mr. Griffin wrote the following:

> It will still be up to the judge as to how much he will knock off. The govt. will recommend a certain amount and I will argue for a certain amount. Then it is up to the judge.

Id. When movant asked "how much," Griffin responded "probably 1-2 years off." Id. Movant states that this note reflected his "thinking at the time of trial;" specifically,

> that with a guideline sentence of 9 years and a 50% reduction in my sentence for my cooperation, I could expect a sentence of 4 ½ years. Even if I did not get a 50% reduction for my cooperation, Mr. Griffin told me that he expected that the government would give me at least a 1 to 2 year reduction for my cooperation which would give me a 7 or 8 year sentence. Therefore, throughout trial, I expected to get a sentence between 4 ½ to 8 years. Mr. Griffin never said anything to me before or during trial to make me think differently. In particular, he never told me that my "cap" or possible maximum sentence was not 9 years but life.

Id. at 15.

After movant's trial, Mr. Griffin told movant that because the jury found the conspiracy involved at least 5 kilos, his base offense level was 32. *Id.* at 16. He stated that the trial court was bound by the jury's finding in this regard and that, based on the ruling in *United States v. Blakely*, the court "had to sentence [him] to a Level 32." *Id.* Griffin also stated that "the issue at sentencing . . . would not be whether I got a reduction of my sentence for my cooperation, but how much of a reduction I would get." *Id.* Movant continued to believe that he would get a sentence of between 5 years and 8 years in prison. *Id.*

A presentence investigation report prepared by the probation officer recommended that movant receive a life sentence. After this report was made available to the parties, Mr. Griffin filed written objections in which he expressed his opinion that movant's base offense level under the sentencing guidelines should be Level 32. *Id.* at 131-37. The government filed a response to Griffin's objections in which it disputed Griffin's calculation of movant's base level, arguing that the level should be higher than 32 based on several factors, such as movant's possession of a gun during the offenses. *Id.* at 138-46. The government also argued that movant was not entitled to downward departures based on his cooperation or his lack of a criminal history. *Id.* Griffin subsequently filed a sentencing memorandum, in which he contested any increase in the guidelines level for possession of a gun, and requested that the court conclude that movant's base offense level was 32 and impose a sentence of less than ten years. *Id.* at 151, 161. In a subsequent motion, Mr. Griffin argued that the court should impose a sentence on movant of "60.5 months, which is 50% off the bottom of the Guideline range (121-151 months)." *Id.* at 177.

Robert Storey, a private investigator hired by Griffin to prepare an alternative sentencing report, agreed with the government that movant's base offense level was 38, and calculated movant's maximum penalty at life with a mandatory minimum of 10 years. *Id.* at 182. Storey told movant that Griffin was "wrong" about movant's base offense level under the guidelines and that "under the jury's verdict the court could find that I was involved in more than 15 kilos

of cocaine and could raise my offense level to Level 38." *Id.* at 16. He told movant that his guideline range could be "above 24 years." *Id.* at 16-17. Movant declares: "this is the very first time I heard from anyone that my guideline range could be above 12 years. When I asked Mr. Griffin about this he said that Mr. Storey was wrong and that my offense level could not exceed Level 32." *Id.* at 17.[7]

Prior to the sentencing hearing, Mr. Griffin told movant that his "base offense level was Level 32 and [his] criminal history was Category II," and that movant had 'a guideline range of 11 to 14 years." *Id.* Griffin told movant that he expected the government would give him at least a 28% sentence reduction for his cooperation, but that he would argue for a 50% reduction or more. *Id.* Based on these statements, movant believed he would get a sentence of 8 years "at worse," but that he hoped for a sentence of "about 5 ½ years, if not less." *Id.*

On September 7, 2005, Griffin filed a motion to reduce movant's sentence based on movant's assistance to the government during the debriefings. *Id.* at 162. Griffin requested an evidentiary hearing on the motion. The hearing on the motion expanded to include movant's sentencing hearing as well. *Id.* 70-124. Movant declares that Griffin told him "nothing would happen on that date" and failed to prepare him for his sentencing proceedings. *Id.* at 17-18. He also declares that Griffin was unprepared to present facts in support of a lesser sentence. *Id.* at 18.

The trial judge found that movant's "offense level is 45, criminal history category is 2, the guideline range is life." *Id.* at 99. Griffin informed the court that movant believed he had been promised, through attorney Garcia, a 50% reduction in his sentence based on his cooperation with the government. *Id.* at 102. Griffin explained, however, that "because the government's position remained firm at 28 percent," Griffin decided to "go to trial and then make his arguments before the Court." *Id.* at 103.

---

[7] The sentencing judge found that movant's base offense level under the guidelines was 38. Dckt. No. 348-1 at 93.

Movant then made the following statement:

> I'm telling the Court, I had heard about the eight-year deal right before trial. I never saw the actual paperwork. Johnny came and told me, yes, there's an eight-year deal, but my understanding was that I have the 28 percent already, at least that's on paperwork that shows that I did cooperate.
>
> My understanding, if I go to trial and lose, Ms. Pings will file a motion. Even throughout the trial Ms. Pings made comments to my counsel, told me she is going to file some sort of motion for downward departure.

*Id.* at 112-13.

In a May 6, 2008 letter to movant's current counsel, Mr. Griffin states that movant's assertion that he was not told he faced life in prison is "simply untrue." *Id.* at 189. He explains that movant was "fully aware prior to trial that the statutory range was a 10-year mandatory minimum and a maximum sentence of life." *Id.* He also states that "the statutory mandatory minimum and maximum were discussed with [movant] thoroughly when considering whether he would accept or reject the government's plea offers." *Id.* Griffin also writes that prior to the sentencing proceedings he gave movant a copy of, and discussed, the government's trial brief, wherein Pings explained that movant's mandatory minimum sentence was 10 years and his maximum sentence was life. *Id.* Griffin asserts that it was movant's position that he was not as big a participant in the conspiracy as his co-defendants and that he should receive a lighter sentence. He also states that he and movant were both aware that movant's maximum statutory sentence exposure was a mandatory minimum of 10 years with a statutory maximum of life, but that he argued otherwise to the court "as an advocate on behalf of [movant] in connection with urging the court to reject the testimony and evidence. . . ." *Id.* at 190. Griffin denies that he believed all along that movant's "exposure" was 10 years at the most. *Id.* He states that both he and movant were "well aware (prior to trial and throughout the trial) that his **exposure** was a mandatory minimum of 10 years with a statutory maximum of life." *Id.* Finally, Mr. Griffin explains his handwritten note to movant during trial, set forth above. He states that the notation

"probably 1-2 years off" was in response to movant's question regarding how much time the government "would request to be knocked off his sentence." *Id.* Mr. Griffin's letter does not address his understanding and advice to movant regarding the sentencing guidelines, nor does it address when he informed movant of the government's plea offers and what advice he gave to movant regarding those offers.

## III. The Parties' Contentions

### A. § 2255 Motion

Movant claims that attorney Griffin rendered ineffective assistance in failing to inform him of all of the government's proposed plea offers, giving erroneous advice when he did advise him of plea offers, erroneously informing him that the only way to challenge the magnitude of the government's offer to reduce his sentence based upon his cooperation was to go to trial, and in participating in the sentencing hearing when he was not prepared to do so. He summarizes his arguments as follows:

> Khera contends that he was denied the effective assistance of counsel before, during, and after trial. In particular, Khera contends that his attorney, Johnny Griffin, failed to timely inform Khera of all of the proposed plea agreements from the government, failed to accurately advise Khera concerning those plea agreements, failed to accurately inform Khera of the possible consequences of not reaching a plea agreement with the government, advised Khera to go to trial merely to preserve a sentencing issue, and failed to adequately represent Khera at sentencing.

> * * *

> In summary, Khera's counsel failed to advise him of all of the proposed plea agreements offered by the government. When Griffin did advise Khera of the government's plea agreements, his advice to Khera to reject those proposed agreements was based upon Griffin's erroneous understanding of the application [sic] law, particularly the sentencing guidelines, to Khera's case. Griffin always informed Khera that his guideline range would be approximately ten years or less, when in fact it was approximately 30 years. Based upon Griffin's erroneous advice, Khera was never able to reach a plea agreement with the government. Griffin also erroneously told Khera that he had to go to trial in order to preserve a sentencing issue. Finally, Griffin thought that the

13

sentencing hearing on January 30, 2006, would be continued so that an evidentiary hearing could be held. When the hearing was not continued, Griffin was unprepared and failed to adequately represent Khera.

Dckt. No. 375 at 3.

Movant argues that attorney Griffin consistently maintained that his sentence should be less than 10 years, based on his erroneous understanding that movant's base offense level was 32 and his guideline range was no more than 12 years, and his belief that movant should receive a 50% reduction in his sentence based on his debriefings. *Id.* at 24. Movant also argues that, because Griffin had an "erroneous understanding of the guidelines," he failed to convey all of the proposed plea agreements from the government because he believed those agreements to be unfair and flawed. *Id.* He contends that, when Griffin did convey the offers to movant, "he told [movant] he had to reject them because they were premised on the government's own flawed understanding of the applicable guidelines." *Id.* Movant asserts that because of Griffin's errors, he was never able to enter into a plea agreement, which was his wish from the beginning. *Id.* at 24-25. Movant also argues that he was harmed by Griffin's errors because the government's failure to recommend a sentence reduction based on his cooperation was expressly based, in part, on movant's failure to enter into a plea agreement. *Id.* at 25; *see also* Dckt. No. 348-1 at 45-47. He asserts that "but for Griffin's ineffectiveness, [movant] would have reached a plea agreement with the government and would have received a sentence of ten years or less." Dckt. No. 375 at 25.

Movant also argues that Griffin's advice that he had to go to trial in order to preserve his dispute with the government over the value of movant's cooperation was incorrect. *Id.* He explains that Griffin's motion to reduce his sentence should have been filed *after* movant had reached a plea agreement with the government, and that "by failing to reach a plea agreement, Griffin waived [movant's] right to contest the amount of reduction [movant] should have received as a result of his cooperation." *Id.* Movant's final argument is that attorney Griffin

14

abandoned him at sentencing because he was unprepared and failed to prepare him for the hearing. *Id.*

In his § 2255 motion, movant requests an evidentiary hearing at which he can present evidence in support of his claims and, after the hearing, that he be permitted to enter a plea to either of the two proposed plea agreements offered by the government while movant was represented by attorney Griffin. Dckt. No. 375 at 4, 26. In his May 30, 2011 reply brief, movant asks that "an equitable remedy be fashioned by the Court." Dckt. No. 388 at 25.

**B. Respondent's Answer**

Respondent counters that attorney Griffin appropriately advised movant of all plea offers but that movant declined to accept them because he wanted a sentence of five years or less. Dckt. No. 385 at 10. He argues that Griffin was not ineffective in failing to convey a plea offer for a six year sentence because there never was such an offer. *Id.* He contends that Griffin "certainly cannot be ineffective for failing to provide proper counsel on an offer that did not exist." *Id.*

Respondent explains that there were two plea agreements offered by the government. *Id.* As described above, the first offer was extended in January 2004, in a letter to Griffin. Respondent points out that movant acknowledges Griffin told him about this plea offer and showed him the government's letter. *Id.* Respondent also points out that Griffin told movant that Pings had only agreed to a 28% reduction in his sentence based on his cooperation. *Id.* at 10-11. Respondent notes that movant does not state he would have entered a plea which would have resulted in a 10-year sentence. *Id.* at 11. For these reasons, respondent argues that movant has failed to demonstrate either that Griffin rendered ineffective assistance in failing to inform him of this agreement, or that Griffin's actions resulted in prejudice.

The second plea offer was extended in November, 2004. As described above, that offer lowered the stipulated drug quantity and proposed a possible sentence of as low as 8 years, depending on the level of movant's cooperation. Dckt. No. 348-1 at 56-67. Movant concedes

that he was advised of this offer by Mr. Griffin before trial. Respondent argues that movant has not claimed his attorney advised him not to take this offer, "nor has he made a specific allegation that his attorney gave him incorrect information about the facts relevant to such a decision." Dckt. No. 385 at 12.

Respondent contends that movant was aware of all information relevant to a decision whether to accept the second offer. Specifically: (1) movant knew he faced a maximum sentence of life in prison; (2) movant acknowledges seeing the January 28, 2004 offer from the government, which stated that his pre-departure sentence under the agreement would be "Level 35, 168 to 210 months;" (3) movant knew that the government had lowered the value of his information from a 50% sentence reduction to a 28% reduction, and should have been aware that his value as an informant would lessen even further over time as the government discovered "the depth and layers of his obstructive conduct prior to trial;" (4) movant knew that Griffin had attempted to reach a more favorable agreement with Pings' supervisor, but that the supervisor had refused; and (5) movant was aware from the debriefing agreement which he signed that, even after the debriefing sessions, the government was not obligated to enter into a future plea agreement or to file any motion regarding the cooperation provided by movant. *Id.* at 12-13.[8] Respondent also argues that Griffin was correct when he advised movant that he would have to go to trial in order to obtain a sentence lower than the 8 year sentence offered in the second plea offer. *Id.* at 13. In short, respondent contends that the advice movant got from Griffin over the course of these proceedings did not undermine movant's ability to make an intelligent decision about whether to accept the government's 8-year offer, and that movant took a known risk when he decided to proceed to trial in order to obtain a lower sentence. *Id.* at 13-14.

---

[8] In its October 13, 2005 opposition to movant's motion to reduce his sentence, the government asserted that "any benefit of the doubt the government was willing to give the defendant evaporated as it became clearer and clearer that he had minimized his own conduct to a tremendous extent, refused to acknowledge responsibility, and had 'played both sides' against the government." Dckt. No. 348-1 at 39.

Respondent's final argument is that movant has not demonstrated he would have accepted the government's 8-year plea offer. Respondent argues that the movant knew about this offer before trial but he did not attempt to take advantage of it. Although the offer had arguably "expired," respondent notes that movant did not ask whether the offer was still open or whether he could still accept it. *Id.* at 15. Respondent argues that movant simply refused to accept a sentence higher than 5 years or to "deal realistically or wisely with his situation even though he was aware of the relevant facts." *Id.*

**C. Movant's Reply**

In his reply brief, movant asserts that because respondent does not dispute any of the facts set forth in his § 2255 motion, an evidentiary hearing is no longer necessary because only questions of law are presented. Dckt. No. 388 at 3, 4. He argues that the court cannot deny his § 2255 motion unless it makes a finding that he has failed to state any claim for relief. *Id.*

Movant explains that he has raised four separate claims of ineffective assistance of counsel and that his claims do not simply reduce to one claim that Griffin was ineffective in failing to appropriately advise movant about the 8-year plea offer, as respondent appears to be arguing. *Id.* Movant argues that, even if he knew his potential statutory maximum was life in prison, this is irrelevant because Griffin told him that his base offense level under the then-binding sentencing guidelines was Level 32. *Id.* at 5-6. He states that "Griffin always maintained, and always informed Khera, that regardless of his potential statutory maximum sentence, his guideline range could not exceed Level 32." *Id.* at 6.

Movant also argues that it is irrelevant that Griffin showed him the government's first plea offer dated January 28, 2004, because Griffin had already rejected it on the grounds that the government's guidelines calculation was wrong and because he believed movant should get a 50% sentence reduction based on his cooperation. *Id.* at 7-8. Movant argues that Griffin was wrong on both counts. *Id.* at 15. With regard to the second plea offer in November, 2004, movant states that Griffin informed him of this offer only after it had expired. *Id.* at 9. He

asserts that Griffin did not take the offer seriously because he was involved in an ongoing dispute with Pings over the sentence reduction movant should receive based on his previous cooperation. *Id.* at 16. He notes that Pings later wrote Griffin a letter stating that if movant wished to enter a guilty plea at a later date, he would no longer be eligible for an additional guideline decrease for early notification of the intention to plead guilty. *Id.* at 11. Movant also explains that he is not claiming Griffin advised him not to accept the plea offers because the issue became moot when Griffin failed to tell him about the offers until after they had already been rejected or expired. *Id.* at 12.

Movant denies that he had all the information necessary to decide whether to accept or reject the 8-year offer. He also denies that he ever knew of any such offer. *Id.* Movant disagrees with respondent that the government did not offer him a plea agreement that would result in a sentence of less than six years. He notes that the November, 2004 agreement offered a sentence of ten years, minus up to 50% for cooperation, which could have resulted in a sentence of slightly more than five years. *Id.* at 10. Movant also argues that it is irrelevant whether he knew what the government thought was his possible sentence range because Griffin told him that the government's calculations were wrong and were contrary to what Pings had been telling him for months. *Id.* at 13.

Movant denies that Griffin was correct in his advice that movant had to go to trial in order to obtain at least a 50% reduction in his sentence based on his cooperation. *Id.* at 16. He notes that Griffin filed a motion to reduce movant's sentence after the trial was concluded, and argues that Griffin could also have filed such a motion after movant accepted one of the plea offers. *Id.* at 17. He contends that a trial was not necessary to preserve this issue. *Id.* He explains, "for instance, if Khera accepted the government's second plea offer, with the 10 year guideline sentence, and the government then declined to make any reduction to that sentence based on Khera's cooperation, Griffin could have filed this exact same motion." *Id.* Movant also notes that the trial judge concluded that by rejecting the government's plea offers, movant

18

had waived the right to raise the issue of a possible reduction of his sentence based on his cooperation. *Id.*; Dckt. No. 348-1 at 77-81.

Movant states that "Griffin always believed that Khera's exposure under the sentencing guidelines was no more than approximately 10 years. This erroneous belief, he says, guided Griffin's entire representation." Dckt. No. 388 at 20. Movant also argues that the handwritten notes between himself and Griffin at movant's trial demonstrate that Griffin had told movant, and movant believed, that his maximum sentence was nine years. *Id.* He contends that he "went to trial under the false belief that his maximum exposure was nine years and that he was likely to get a seven or eight year sentence." *Id.*

Movant also notes that Griffin and Storey filed pleadings which conflicted as to movant's guideline range. He questions "how any competent defense attorney could file with the Court, on the same day, one pleading asserting that his client's guideline range was 10 to 13 years and a second pleading asserting that his client's guideline range was 24 to 30 years." *Id.* at 21. He argues that Griffin "never understood how the sentencing guidelines applied to Khera's case." *Id.* Movant concludes that he:

> was not informed of the government's first plea offer until after Griffin had rejected it. Khera was not informed of the government's second and third plea offers until after they expired. Griffin never gave Khera an accurate guideline analysis. Khera was told he had to go to trial in order to preserve an issue which, in fact, he waived by going to trial. Khera was not adequately represented at sentencing.

*Id.* at 25.

**D. Respondent's "Response"**

On June 28, 2011, respondent filed a "response" to movant's reply. Dckt. No. 389. Therein, respondent asserts that Griffin never specifically rejected the first plea offer dated January 28 2004 but that, even if he did, movant is unable to show that he was prejudiced by Griffin's actions because the government later made a more favorable offer which movant was

////

free to accept. *Id.* at 4.[9] With regard to movant's assertion that he couldn't accept the second plea offer because it had expired by the time he learned of it, respondent argues that movant "completely ignores the reality that plea negotiation is a fluid, give-and-take process which can always be re-opened." *Id.* Respondent argues that movant cannot prove that Griffin's actions resulted in prejudice because movant was "aware of the lowest plea offer prior to trial." *Id.* at 5.

Respondent also argues that movant's claim that Griffin gave him erroneous legal advice about the plea offers is "legally insufficient" because movant does not state that Griffin advised him to reject the offers. *Id.* Respondent contends that, in any event, the record shows Griffin "understood the guidelines." *Id.* He notes that counsel submitted a report from Mr. Storey that "reflected a very correct understanding of the guidelines." *Id.* He argues that the fact Griffin submitted his own brief with a different understanding of the guidelines in an attempt to seek a lower sentence for movant "does not mean that he advised his client according to these approaches." *Id.* Respondent also contends that the law regarding calculation of the guidelines was in flux at that time; therefore, it may have been good strategy for Griffin to attempt to "make a record" in the event future developments were in movant's favor. *Id.* at 5-6. He argues that Griffin's "aggressive and creative advocacy" on movant's behalf should not obscure the fact that, according to Griffin's letter to Pings, movant was always told that his sentence exposure was between 10 years and life.

Respondent also argues that Griffin's advice to movant that he had to go to trial in order to challenge the government's refusal to move for a 50% sentence departure was not erroneous and was certainly not deficient performance. *Id.* Respondent notes that movant knew he would not get the government to agree to recommend a 50% reduction because movant "was manipulative, had misled the government, lied to the Court and had obstructed the cooperation of

---

[9] The court notes, however, that in its opposition to movant's motion to reduce his sentence, filed in the trial court on Oct. 13, 2005, the government took the position that movant rejected this agreement. Dckt. No. 348-1 at 26, 35.

others." *Id.* Movant also knew that Pings' supervisor would not agree to override her decision in this regard. *Id.* He states that, under these circumstances, "if the defendant wanted to seek relief on the grounds that the government acted in bad faith and ask the court to enforce an alleged '50% agreement,' the defendant had two choices: go to trial or plead 'straight up.'" *Id.* at 7.

Respondent argues that if movant wished to ask the court for a 50% sentence reduction with no strings attached, he was required to go to trial. He argues, "it cannot be said that it was a deficient strategy to reject the government's confining terms and try for the right to make an unrestricted free-for-all argument at time of sentencing." *Id.* at 8. Respondent also notes that the trial court allowed Griffin to argue that the government had entered into an agreement with movant's first counsel to offer movant a 50% sentence reduction, even though it found that movant had failed to make an adequate showing. *Id.* at 8-9. Respondent argues that Griffin's decision to go to trial was a valid strategy because it allowed movant the opportunity to successfully persuade jurors he was not guilty of all objects of the conspiracy relating to drugs other than cocaine.

Finally, with regard to movant's argument that Griffin failed to offer meaningful assistance at the sentencing proceedings, respondent argues that movant has failed to "allege how the representation was deficient or to identify any errors in his sentencing." *Id.* at 9. He states that the guidelines were properly assessed and notes that the trial court departed downward from the guidelines to reduce movant's guidelines sentence. He argues, in short, that movant has failed to show how the sentencing proceedings would have been different absent his counsel's alleged deficient performance.

### E. Movant's Reply

On January 19, 2012, movant filed a reply to respondent's "response." Therein, he reasserts that an evidentiary hearing is not necessary on his motion because the facts are not in dispute. Dckt. No. 393 at 2-5. Movant states that he is now not requesting an evidentiary

hearing and that no hearing is necessary. *Id.* at 4.

Movant also argues that, contrary to respondent's contentions, Griffin rejected the January 28, 2004 plea offer by virtue of his January 29, 2004 responsive letter to Pings. *Id.* at 6. Movant states that Griffin told him he had rejected the offer. Movant also denies that he could have accepted the November, 2004 plea offer after it had expired. *Id.* at 7. He reasserts that the reason he does not allege Griffin advised him to accept the plea offers is that the offers had already expired or been rejected by the time he heard about them. He also repeats that Storey's report, which reflected a guidelines analysis different from Griffin's, illustrates that Griffin did not understand how the guidelines applied to movant's case "even *after* his own defense expert informed him of the correct guideline analysis." *Id.* at 8. He argues that it constitutes ineffective performance "for defense counsel to hire and present a defense expert that completely destroys defense counsel's strategy in the litigation." *Id.*

Movant also argues that Griffin had no valid reason for going to trial, as opposed to accepting one of the plea agreements. *Id.* at 9-10. Indeed, according to movant, by going to trial movant waived the right to challenge the government's position concerning the value of his cooperation. *Id.* at 10. Movant argues that Griffin should have "enter[ed] into a plea agreement with the government under the best terms and conditions he could get, then argue at sentencing, if necessary, that the government's proposed reduction of [movant's] sentence, based upon his cooperation, was insufficient and in bad faith." *Id.* at 11. He argues,

> Griffin's mistake appears to be that he always believed he *had* an agreement with the government when in fact he did not." Griffin believed that he could go to trial *and* simultaneously have an agreement with the government about a sentencing reduction based on [movant's] cooperation. In fact, he could not, as the government argued and the district court ruled.

*Id.* Movant argues, in essence, that Griffin should have realized he lost the opportunity to obtain a reduction of movant's sentence when he failed to accept any of the plea offers.

////

Movant disagrees that, by going to trial, Griffin maintained the ability to persuade the jurors that he was not guilty of conspiracy with regard to drugs other than cocaine. *Id.* He states that "this case was about cocaine." *Id.* Movant states that his sentence would have been the same even if "he 'won' concerning every other drug besides cocaine." *Id.* at 13. In sum, movant argues that "if Griffin had properly understood the guidelines and had adequately informed Khera of the government's plea offers, Khera would not have gone to trial and would have settled his case for something less than the thirty years he got at sentencing." *Id.* at 14.

## IV. Legal Standards

### A. § 2255 Motion

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

### B. Ineffective Assistance of Counsel

To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent assistance. *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* The Ninth Circuit has opined that this burden "represents a fairly low threshold." *Riggs v. Fairman*, 399 F.3d 1179, 1183 (9th Cir. 2005) (citing *Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (stating that a "reasonable probability" is actually a lower standard than preponderance of the evidence).

The *Strickland* standards apply to claims of ineffective assistance of counsel involving counsel's advice offered during the plea bargain process, including plea offers that lapse or are rejected. *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399 (2012); *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. ___, 130 S.Ct. 1473 (2009); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Nunes v. Mueller*, 350 F.3d 1045, 1052 (9th Cir. 2003). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler*, 132 S.Ct. at 1384 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). As a general rule, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 132 S.Ct. at 1408. *See also United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994) (a trial counsel's "failure to communicate the government's plea offer to his client constitutes unreasonable conduct under prevailing professional standards."). Accordingly, when a defense attorney allows a plea offer to expire without advising the defendant about the offer or allowing him to consider it, "defense counsel did not render the effective assistance the Constitution requires." *Frye*, 132 S.Ct. at 1408. "It is equally ineffective to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest." *United States v. Leonti*, 326 F.3d

1111, 1117 (9th Cir. 2003).

"A defendant has the right to make a reasonably informed decision whether to accept a plea offer." *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (citations omitted). Trial counsel must give the defendant sufficient information regarding a plea offer to enable him to make an intelligent decision. *Id.* at 881. "[W]here the issue is whether to advise the client to plead or not 'the attorney has the duty to advise the defendant of the available options and possible consequences' and failure to do so constitutes ineffective assistance of counsel." *Blaylock*, 20 F.3d at 1465 (quoting *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir.1981)).

Counsel is not "required to accurately predict what the jury or court might find." *Turner*, 281 F.3d at 881. *See also McMann*, 397 U.S. at 771 ("uncertainty is inherent in predicting court decisions."). Nor is counsel required to "discuss in detail the significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or "strongly recommend" the acceptance or rejection of a plea offer. *Turner*, 281 F.3d at 881. Although counsel must fully advise the defendant of his options, he is not "constitutionally defective because he lacked a crystal ball." *Id.* The relevant question is not whether "counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771.

In order to show prejudice in the context of plea offers, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S.Ct. at 1384. Specifically, where a plea offer has lapsed or been rejected because of trial counsel's deficient performance and the defendant has later accepted another, less favorable plea offer,

> defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a

> reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Frye*, 132 S.Ct. at 1409. Where a defendant claims that ineffective assistance of trial counsel led him to accept a plea offer instead of proceeding to trial, a defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. And in cases where trial counsel's defective advice caused the defendant to reject a plea offer and proceed to trial, prejudice is demonstrated where "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that is fact were imposed." *Lafler*, 132 S.Ct. at 1385.

### C. Evidentiary Hearing

In reviewing a motion brought pursuant to § 2255, a federal court shall hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). *See also United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003); *Blaylock*, 20 F.3d at 1465 (citing 28 U.S.C. § 2255(b)). "Evidentiary hearings are particularly appropriate when "claims raise facts which occurred out of the courtroom and off the record." *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989); *accord Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990). When a § 2255 movant raises a claim of ineffective assistance of counsel, the court should hold an evidentiary hearing unless "something in the record conclusively shows that [movant's] trial attorney was not ineffective." *Burrows*, 872 F.2d at 917. However, to be entitled to an evidentiary hearing the movant must provide specific factual allegations which, if true, state a claim on which relief under § 2255 could be granted.

*United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003); *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984).  The court may deny a request for evidentiary hearing on a § 2255 motion "if the petitioner's allegations, viewed against the record, fail to state a claim or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'"  *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (citations omitted).

**V. Discussion**

Movant has presented a colorable claim of ineffective assistance of counsel based on attorney Griffin's alleged failure to advise him of the government's plea offers and his alleged failure to accurately advise movant of the consequences of pleading guilty and proceeding to trial.  See *Nunes*, 350 F.3d at 1053; *Iaea*, 800 F.2d at 865.  Based on the authorities cited above, and assuming the truth of movant's allegations that attorney Griffin failed to advise him of the government's plea offers until after they had already expired or been rejected and that he would have accepted at least one of those offers if they had been presented in a timely manner, movant could prevail on his claim of ineffective assistance of counsel.  Further, if the court were to find that movant was incorrectly advised of the possible sentence he faced if he was convicted after a trial, or was otherwise given incorrect advice as to whether to accept or reject a plea offer, he could prevail on his claim of ineffective assistance of counsel.  *See Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (concluding that counsel's "gross mischaracterization" of the sentence that the defendant could face if he refused a plea offer, along with erroneous advise on the possible effects of going to trial, constituted ineffective assistance of counsel); *United States v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000) (remanding for evidentiary hearing where counsel allegedly underestimated defendant's actual sentence by 102 months).  The gap between movant's potential sentence if convicted and the sentences contemplated by the plea offers is sufficient to merit an evidentiary hearing on movant's allegations in this regard.

There is sufficient objective evidence in the record to warrant an evidentiary hearing to determine whether there is a "reasonable probability" that movant would have accepted either of

the government's pleas offers if he was correctly advised about them on a timely basis. Further, the record currently before the court is insufficient to enable the court to determine exactly when movant learned of each of the government's offers and what movant was told by Mr. Griffin, if anything, with respect to whether to accept or reject the offers. An evidentiary hearing is necessary to resolve these matters. Movant's assertion in his reply that a hearing is unnecessary because respondent has not denied all of his alleged facts is not dispositive of whether a hearing should be held. Respondent is not in a position to know what movant was told by his trial counsel and whether, or when, the government's plea offers were conveyed to movant. Therefore, the respondent could not be expected to admit or deny any of these facts.

**VI. Conclusion**

Accordingly, IT IS HEREBY ORDERED that:

1. The matter is set for a Status Conference on October 17, 2012 at 10:00 a.m. in Courtroom No. 24; and

2. Not later than seven (7) days prior to the Status Conference, counsel shall file a status reports outlining the number of witnesses they intend to call and the estimated time required to conduct the evidentiary hearing.

DATED: September 13, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE